

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ 08625

MIKIE SHERRILL
*Governor*

DR. DALE G. CALDWELL
*Lt. Governor*

JENNIFER DAVENPORT
*Attorney General*

JEREMY M. FEIGENBAUM
*Solicitor General*

April 3, 2026

**VIA ECF**
Honorable Michael A. Shipp, U.S.D.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street, Court Room 5W
Trenton, New Jersey 08608

> **Re:  *Curaleaf Holdings, Inc. v. N.J. Cannabis Regulatory Commission, et al.*, Civ. No. 25-16397 (MAS) (RLS)**

Dear Judge Shipp:

As discussed during oral argument, Defendants write to advise the Court of *Apical Biotek, LLC v. Maitri Holdings, LLC*, No. 25-1396, 2026 WL 177927 (3d Cir. Jan. 22, 2026).

In *Apical Biotek*, the District Court granted summary judgment in favor of the defendants on breach-of-contract and unjust-enrichment claims. *Id.* at *1. On appeal, the Third Circuit vacated and remanded the case to the District Court to determine "whether the contract provided for a transaction that would be illegal under federal law"—because it related to federally illegal cannabis—and thus the case should be dismissed as "unenforceable by federal courts." *Id.* at *2. The Third Circuit vacated the judgment on this basis even though "[n]either side said the contract was illegal," "Pennsylvania has 'legalized the possession and use of marijuana in limited circumstances,'" and both sides argued that "deciding th[e] compensation dispute d[id] not require cultivating, processing, or selling marijuana, so resolving th[e] case would not 'compel the violation of federal law.'" *Id.*



April 3, 2026
Page **2** of **2**

The Third Circuit explained that if the contract related to a business that "cultivates, manufactures, or distributes a federally controlled substance, then claims based on a contract to provide such a business services should be dismissed because enforcement would require this Court to 'stamp its approval on the parties' unlawful activities,' namely, violations of the federal drug laws." *Id.* (quoting C*CH Acquisitions, LLC v. J&J&D Holdings, LLC*, No. 23-2983, 2025 WL 601249, at \*6 (S.D. Ohio Feb. 25, 2025)). And the concurrence emphasized that the Third Circuit was "confirm[ing] what should have always been obvious: Litigants seeking relief related to drug distribution conspiracies can expect a rigorous inquiry by the district courts. And if, as is likely, the case and controversy turns on controlled substances, a prompt dismissal." *Id.* at \*3 (Matey, J., concurring).

Defendants respectfully submit that the Third Circuit's decision reinforces all the reasons why Curaleaf's complaint should be dismissed. First, under the unclean-hands doctrine, a federal court should not be deploying its equitable powers to facilitate Curaleaf's federally illegal cannabis business by eliminating a key state licensing requirement. ECF No. 39-1 at 22–26; ECF No. 43 at 11–19. And that's what this Court would be doing if it strikes down the labor-peace requirement: "stamping its approval" on Curaleaf's business and making it easier for it to manufacture, distribute, and sell cannabis in violation of the Controlled Substances Act. Second, despite state-level regimes that allow cannabis operations under state law, "possessing, distributing, and manufacturing marijuana remain illegal under federal law." *Apical Biotek*, 2026 WL 177927, at \*2. So the NLRA—which was enacted to govern labor disputes affecting *inter*state commerce—does not apply to, and should not be held to preempt, state laws in this purely *intra*state industry. ECF No. 39-1 at 32–45; ECF No. 43 at 24–34.

The Court should dismiss the case for the reasons explained by Defendants.

Respectfully yours,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By:    */s/ Bassam F. Gergi*
        Bassam F. Gergi
        Deputy Attorney General

cc:  Counsel of Record (via ECF)

Case 3:25-cv-16397-MAS-RLS Document 51 Filed 04/03/26 Page 3 of 6 PageID: 496

Apical Biotek, LLC v. Maitri Holdings, LLC, Not Reported in Fed. Rptr. (2026)

2026 WL 177927

2026 WL 177927
Only the Westlaw citation is currently available.
**NOT PRECEDENTIAL**
United States Court of Appeals, Third Circuit.

APICAL BIOTEK, LLC; Justin Givens, Appellants
v.
MAITRI HOLDINGS, LLC; Maitri Genetics, LLC;
Maitri Management, LLC; Maitri Medicinals, LLC

No. 25-1396
|
Submitted Under Third Circuit
L.A.R. 34.1(a) January 12, 2026
|
Filed: January 22, 2026

**Attorneys and Law Firms**

Christian D. Ehret Esq., Brian J. Jackson Esq., Webb Law Firm, Pittsburgh, PA, for Plaintiff - Appellant.

Joshua Horn Esq., Michael J. Zukowski Esq., Fox Rothschild, Philadelphia, PA, for Defendant - Appellee.

On Appeal from the United States District Court for the Western District of Pennsylvania, (D.C. No. 2:22-cv-01737), District Judge: Honorable Marilyn J. Horan, Submitted Under Third Circuit L.A.R. 34.1(a) January 12, 2026

Before: SHWARTZ, MATEY, AMBRO, Circuit Judges.

OPINION [*]

SHWARTZ, Circuit Judge.

**\*1** Plaintiffs Apical Biotek LLC and Justin Givens appeal the District Court's order granting Defendants' Maitri Holdings, LLC, Maitri Genetics, LLC, Maitri Management, LLC, and Maitri Medicinals, LLC motion for summary judgment on Plaintiffs' breach of contract and unjust enrichment claims.[1] Because the contract at issue may involve conduct that violates federal law, we will vacate and remand to the District Court to determine whether the contract involves such conduct, and if so, whether dismissal is warranted.

I

Givens is a cannabis consultant and the sole member of Apical Biotek LLC. Defendants operate a tissue culture lab and medical marijuana dispensaries. Plaintiffs and Defendants reached "an understanding on a financial framework" to compensate Plaintiffs for consulting for Defendants, including on the operation of a "tissue culture lab." App. 135, 406. Thereafter, Defendants emailed Plaintiffs proposed terms, including that Givens's compensation would include equity in Maitri Holdings, LLC.[2] No agreement was signed, but Defendants paid Plaintiffs at least $541,588.47 for "products, services, and expenses," Dist. Ct. Dkt. 54 ¶ 118, and provided no equity.

Plaintiffs sued Defendants for, among other things, breach of contract and unjust enrichment. The District Court granted Defendants summary judgment. Apical Biotek, LLC v. Maitri Holdings, LLC, No. 2:22-CV-01737-MJH, 2025 WL 417017, at *1 (W.D. Pa. Feb. 6, 2025). On the breach of contract claim, the Court concluded that, although there were genuine disputes of facts material to contract formation, Plaintiffs failed to adduce sufficient evidence of damages, leaving the factfinder to "rely upon pure conjecture and speculation" to ascertain damages. Id. at *3-4. The Court also granted Defendants summary judgment on the unjust enrichment claim because Plaintiffs were paid for their services, and no documentary evidence shows that they were paid at a discounted rate. Id. at *4.

Plaintiffs appeal.

II [3]

We question whether we may grant relief on claims based on an agreement that contemplates distribution of a controlled substance in violation of federal law. Federal courts may not assist parties in "carrying out the terms of an illegal contract," Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982) (quoting McMullen v. Hoffman, 174 U.S. 639, 654 (1899)), and will decline to enforce such a contract where the judgment would order a violation of federal law,[4] Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH, 867 F.3d 692, 698-99 (6th Cir. 2017).

Case 3:25-cv-16397-MAS-RLS    Document 51    Filed 04/03/26    Page 4 of 6 PageID: 497
Apical Biotek, LLC v. Maitri Holdings, LLC, Not Reported in Fed. Rptr. (2026)
2026 WL 177927

**\*2** Although Pennsylvania has "legalized the possession and use of marijuana in limited circumstances," Commonwealth v. Barr, 266 A.3d 25, 28 (Pa. 2021) (citing 35 Pa. Stat. Ann. §§ 10231.101-10231.2110), possessing, distributing, and manufacturing marijuana remain illegal under federal law, 21 U.S.C. §§ 812(c), 841(a)(1). The breach of contract alleged here involves Defendants' purported failure to pay Plaintiffs for services provided to Defendants' medical marijuana business. If that business cultivates, manufactures, or distributes a federally controlled substance, then claims based on a contract to provide such a business services should be dismissed because enforcement would require this Court to "stamp its approval on the parties' unlawful activities," namely, violations of the federal drug laws. CCH Acquisitions, LLC v. J&J&D Holdings, LLC, No. 2:23-CV-2983, 2025 WL 601249, at \*6 (S.D. Ohio Feb. 25, 2025); see also AgriAuto Genetics, LLC v. Harris, No. 22-CV-273-DES, 2023 WL 8371940, at \*2-3 (E.D. Okla. Dec. 4, 2023) (dismissing cannabis consultant's breach of contract and unjust enrichment claims because "the Court cannot issue orders that facilitate illegal activity, namely violations of the [Controlled Substances Act]"); Sensoria, LLC v. Kaweske, 581 F. Supp. 3d 1243, 1260-61 (D. Colo. 2022) (holding that judicial relief "can neither require an act that would violate the [Controlled Substances Act] nor award monetary damages paid from a marijuana asset or income stream").

Because the parties had not addressed this subject before us or the District Court, we asked for their views. Text Order, Dkt. No. 41 (Dec. 9, 2025). Neither side said the contract was illegal.[5] Rather, Plaintiffs argued that "[t]he plant genetics provided under the agreement" fall within the definition of hemp under 7 U.S.C. § 1639*o*(1), so the contract does not involve a controlled substance. Pls.' Letter, Dkt. No. 42, at 2 (Dec. 16, 2025). Defendants asserted only that deciding this compensation dispute does not require cultivating, processing, or selling marijuana, so resolving this case would not "compel the violation of federal law." Defs.' Letter, Dkt. No. 43, at 7 (Dec. 16, 2025). Plaintiffs agreed, echoing that granting relief would require Defendants to transfer the value of the equity, which they contend would not violate federal law. Pls.' Letter, Dkt. No. 42, at 2 (Dec. 16, 2025).

Several district courts, however, reject this view, which supports the conclusion that a court that awards the value of the equity based on a contract with a business that violates federal law would be "complicit in the parties' illegal agreement," and cannot enforce it. CCH, 2025 WL 601249, at \*6 ("[F]ederal courts may reject marijuana-adjacent contracts."); see also Sensoria, 581 F. Supp. 3d at 1260 (declining to "vindicate equity in or award profits from a business that grows, processes, and sells marijuana").

Because the factual issue of whether the contract provided for a transaction that would be illegal under federal law remains unresolved, we will remand to the District Court to conduct factfinding on that issue and evaluate the consequences thereof, namely, whether this contract is unenforceable by federal courts.[6]

### III

For the foregoing reasons, we will vacate and remand.

MATEY, Circuit Judge, concurring.

Marijuana is a Schedule I controlled substance. 21 U.S.C. § 812; 21 C.F.R. § 1308.11(d) (2026). The Controlled Substances Act ("CSA") makes manufacturing, distributing, or dispensing marijuana a federal crime. 21 U.S.C. § 841(a)(1). It also makes conspiring to manufacture, distribute, or dispense marijuana a federal crime. *Id.* § 846. Defying that command, many states have enacted conflicting laws authorizing marijuana use as a local concern.

**\*3** Pennsylvania is an example. The Commonwealth's Medical Marijuana Act established a "medical marijuana program for patients suffering from serious medical conditions." 35 Pa. C.S. §§ 10231.101, .301(a). To that end, the Act made the "use or possession of medical marijuana as set forth in th[e] act ... lawful within th[e] Commonwealth." *Id.* § 10231.303(a). The Commonwealth declared that "[s]cientific evidence suggests" medical marijuana has therapeutic benefits, *see id.* § 10231.102(1), a claim since contradicted by further study.[1]

Whatever the minimal, likely no more than symbolic, benefits of these programs, the CSA remains "the supreme Law of the Land."[2] U.S. Const. art. VI, cl. 2. That cannot be ignored in disputes about marijuana-related contracts. "The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract." *McMullen v. Hoffman,* 174 U.S. 639, 654 (1899).[3] Therefore, federal courts will not enforce "illegal promises," *Kaiser Steel Corp v. Mullins,* 455

2026 WL 177927

U.S. 72, 77 (1982), even in diversity cases, *Kelly v. Kosuga,* 358 U.S. 516, 519 (1959). Meaning courts cannot and will not enforce contracts violative of the CSA.

Apical Biotek appears to claim the existence of such a contract. Maitri produces and sells medical marijuana in Pennsylvania. Apical argues it contracted to "design and implement a tissue culture laboratory, provide cannabis genetics, and consult on other aspects of Maitri's business." Opening Br. 4. Apical, in other words, seems to have at least conspired with Maitri to violate the CSA.

Today, we confirm what should have always been obvious: Litigants seeking relief related to drug distribution conspiracies can expect a rigorous inquiry by the district courts. And if, as is likely, the case and controversy turns on controlled substances, a prompt dismissal.

## All Citations

Not Reported in Fed. Rptr., 2026 WL 177927

---

### Footnotes

\*	This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1	Although Plaintiffs' notice of appeal also identified the order denying Plaintiffs' motion for partial summary judgment, they argue only that the District Court erred in granting Defendants' motion.

2	Although Plaintiffs argue that the agreement covered an equity interest in "Maitri," Appellants' Br. at 1, which they define as all four Defendants, the proposals in the record indicate that the equity was in Maitri Holdings, LLC.

3	The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

4	In some cases, this raises an issue of severability, and a court must decide whether the lawsuit seeks to enforce (1) a legal promise contained in a contract that has a separate illegal provision or (2) a promise that is itself illegal. Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH, 867 F.3d 692, 699 (6th Cir. 2017). However, even if the relief sought is the just transfer of money, which on its own would be legal, federal courts may not be able to "award monetary damages paid from a marijuana asset or income stream." Sensoria, LLC v. Kaweske, 581 F. Supp. 3d 1243, 1260 (D. Colo. 2022).

5	Since both parties appear motivated to be in, or be compensated for providing services to, Defendants' business, it is unsurprising that neither asserted illegality as an affirmative defense.

6	See Bartch v. Barch, 111 F.4th 1043, 1062-63 (10th Cir. 2024) (vacating and remanding for district court to determine whether enforcing judgment concerning marijuana business would violate federal law and public policy).

1	S*ee, e.g.*, Michael Hsu et al., *Therapeutic Use of Cannabis and Cannabinoids: A Review*, JAMA (Nov. 26, 2025), https://jamanetwork.com/journals/jama/fullarticle/2842072?guestAccessKey=a368e622-e374-4a0c-8d3b-22a976500305 [https://perma.cc/VV5K-3CTW].

2	And "the Judges in every State" are "bound" by the CSA. U.S. Const. art. VI, cl. 2.

---

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Apical Biotek, LLC v. Maitri Holdings, LLC, Not Reported in Fed. Rptr. (2026)**

2026 WL 177927

3     An "unlawful" agreement "can convey no rights in any Court to either party, and will not be enforced by decisions at law or by decree here in favour of one against the other of persons equally culpable." *Armstrong v. Armstrong* (1834) 40 Eng. Rep. 18, 25 (Lord Brougham LC); *accord Phillips v. Thorp*, 10 Or. 494, 497 (1883).

**End of Document**      © 2026 Thomson Reuters. No claim to original U.S. Government Works.